IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PEOPLES NATIONALS BANK, N.A.**,

**Plaintiff-Appellee,**

v.

**CORT JONES, LISA JONES**
**Defendant-Appellees,**

          NO. 12-0045-DRH

**BANTERRA BANK.**         BK NO. 10-41897
**Defendant-Appellant.**     ADV CASE NO.11-04050

## OPINION

**HERNDON, Chief Judge:**

### I. Introduction and Procedural Background

Banterra Bank ("Banterra") appeals both the bankruptcy court's opinion denying its motion for summary judgment and granting Peoples National Bank, NA.'s motion for summary judgment and the order and judgment reflecting the same. Based on the following, the Court reverses the bankruptcy court's opinion and order and judgment and remands this case to the bankruptcy court for further proceedings consistent with this Opinion.

The bankruptcy court found:

"Therefore, the Court concludes that upon being apprised that Peoples' mortgage on the Windsor Place lots contained a cross-collateralization clause, it was incumbent on Banterra to diligently investigate whether the debtors had other obligations that may be affected by the provision. To hold otherwise would render cross-collateralization clauses

> ineffective as to subsequent mortgages in virtually every circumstance, and would, effectively, allow subsequent mortgagees to simply ignore cross-collateralization clauses without peril.
> Based on the foregoing, the Court determines that pursuant to Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, that there are no genuine issues as to any material fact and that Peoples is entitled to judgement as a matter of law. Accordingly, Peoples National Bank's Motion for Summary Judgment is GRANTED and Banterra Bank's motion is DENIED. Peoplesby virtue of its 2004 mortgage and attendant cross-collateralization clause, is entitled to recover $214,044.26, plus per diem interest, legal fees, costs from the proceeds fo the sale of the property at 10 Windsor Place, Mount Vernon, Illinois. The remaining proceeds shall be paid to Banterra Bank to satisfy its mortgage of December 31, 2009 on the Windsor Place property."

(11-04050-lkg; Doc. 52, ps. 16-17).

## II. Applicable Standard of Review

Pursuant to 28 U.S.C. § 158, a federal district court has jurisdiction to hear appeals from the rulings of the bankruptcy court. On an appeal, a district court "may affirm, modify or reverse a bankruptcy court's judgment, order or decree, or remand with instructions for further proceedings. Fed.R.Bankr.P. 8013; *see also In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bnkr.P. 8013. Accordingly, the Court reviews the Bankruptcy Court's findings of fact for clear error and reviews its conclusions of law *de novo*. *In re ABC-Naco, Inc.,* 483 F.3d 470, 472 (7th Cir. 2007). The Court reviews mixed questions of fact and law *de novo*. *Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004).

A district court will affirm a grant of summary judgment if there are no genuine issues as to any material facts and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)). A district court can also affirm a summary judgment "on any ground supported by the record, even if it was not relied upon by the court below." *Id.* (citing *Johnson v. Gudmundsson,* 35 F.3d 1104, 1115 (7th Cir. 1994)).

Before addressing the merits of the appeal, the Court must consider Peoples' argument that since Banterra's Rule 8006 disclosure presented only one issue, it waived the other issues contained in its brief.

Fed. R. Bankr.P. 8006 provides:

Within 14 days after filing the notice of appeal as provided by Rule 8001(a), ... the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 14 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal....

Here, Banterra's Rule 8006 designation contained the following issue:

Whether the bankruptcy court erred in holding that Peoples National Bank could collect the face amount of its mortgage under a cross collateralization clause where the original note for the full face amount of the mortgage had been paid down by sales of collateral, and the cross collateralization clause of the mortgage did not describe the other debts purportedly secured by the mortgage, by failing to state the amount of the other debt secured, the interest rate on the other debt, and the maturity date of the other debt as required by the Illinois Conveyance Act, formerly Smith Hurd Annotated Statutes (S.H.A.), Chapter 30 § 10, now 765 ILCS 5/11.

Thereafter, Banterra filed its brief containing the following issues on appeal:

> Whether the Bankruptcy Court erred in failing to apply controlling Illinois law, which requires a mortgage to describe the nature of the debt secured, amount secured, due date and interest rate, to the Peoples National Bank mortgage cross-collateralization clause.
>
> Whether the Bankruptcy Court erred in sustaining the validity of the Peoples National Bank Mortgage cross-collateralization clause, where the mortgage was patently ambiguous as to the debt secured.
>
> Whether the Bankruptcy Court erred in holding that the Peoples National Bank mortgage cross-collateralization clause, which was patently inconsistent with the other terms of the mortgage, provided inquiry notice of unspecified debts incurred before and after the mortgage.

The Court notes that the Seventh Circuit has not addressed this issue and that there is a circuit split about whether the failure to list an issue in the statement of issues on appeal pursuant to Bankruptcy Rule 8006 results in a waiver of that issue.[1] Based on this Court's review of the case law, the Court finds the First Circuit's guidance instructive: "This does not mean, of course, that the list of issues must be precise to the point of pedantry. An issue that is not specifically enumerated may be deemed preserved if the substance of the issue reasonably can be inferred from an

---

[1] Some courts have found that a party's failure to include a particular issue in the Rule 8006 designation, in the absence of exceptional circumstances, constitutes waiver. *See, e.g., Zimmermann v. Jenkins (In re GGM, P.C.)*, 165 F.3d 1026, 1032 (5th Cir. 1999); *Snap-On Tools, Inc., v. Freeman (In re Freeman)*, 956 F.2d 252, 255 (11th Cir. 1992). While other courts have found the contrary. *See Office of the U.S. Tr. v. Hayes (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.)*, 104 F.3d 1147, 1148 (9th Cir. 1997)(per curiam)("We hold that Bankruptcy Rule 8006 does not limit a party's inability to appeal from a bankruptcy's court's judgment. This document, filed with the trial court clerk, does not impact upon issue statements required by the court of appeals.").

issue or issues that are listed." *In re American Cartage, Inc.*, 656 F.3d 82, 91 (1st Cir. 2011)(citing *In re Freeman*, 956 F.2d 252, 255 (11th Cir. 1992)). Contrast, issues that were not properly raised in the court below cannot be raised for the first time on appeal, and are deemed waived. *See Broaddus v. Shields,* 665 F.3d 846, 853 (7th Cir. 2011), *citing LaBella Winnetka, Inc. v. Vill. of Winnetka,* 628 F.3d 937, 943 (7th Cir. 2010); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.,* 515 F.3d 718, 720 (7th Cir. 2008).

Here, the Court finds that the additional issues briefed by Banterra on appeal can be reasonably inferred from the stated issues in the Rule 8006 designation and that these issues are based on the same arguments raised during the bankruptcy court proceedings. These issues do not require separate findings of fact and do not constitute surprise to Peoples. Thus, the Court finds that Banterra did not waive these issues. Accordingly, these issues are preserved on appeal.

### III. <u>Facts</u>[2]

On December 21, 2010, debtors, Cort R. Jones and Lisa Jones, filed a voluntary Chapter 11 bankruptcy petition in cause number 2010-41897. Peoples and Banterra are secured creditors of debtors and claim perfected liens against various real and personal property of debtors.

In 2001, debtors acquired title to ten acres of real estate in Mount Vernon, Illinois. In July 2003, debtors subdivided the land into a residential subdivision

---

[2] The facts are taken from the parties' stipulation of facts and Judge Myers' December 9, 2011 Opinion.

known as Windsor Place Subdivision.

On November 1, 2004, Peoples loaned debtors the original principal amount of $214,044.26, evidenced by Promissory Note #18452 ("Peoples' Loan 1"). Peoples Loan 1 was secured by a real estate mortgage date November 1, 2004 and recorded November 5, 2004. The mortgage covered Lots 1-11, 13, and 15-19 of the Windsor Place Subdivision. Thereafter, Peoples obtained a mortgage title insurance policy insuring the mortgage as collateral for Peoples' Loan 1 that stated: "in the principal amount of $214,044.26, together with interest as therein specified and subject to the covenants, agreements, and conditions therein contained."

The mortgage contained the following:

> **MAXIMUM LIEN**. At no time shall the principal amount of the Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $214,044.26.

The mortgage defined "Indebtedness" as:

> **Indebtedness**. The word "Indebtedness" means all principal, interest, and other amounts costs and expenses payable under the Note or Related Documents, together with all renewals or extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

It also defined "Note" as:

> **Note**. The word "Note" means a note in the amount of $214,044.26 dated November 1, 2004, and all renewals, modifications, and extensions thereof. NOTICE TO GRANTOR: THE NOTE CONTAINS A

VARIABLE INTEREST RATE.

Further, the mortgage included a cross-collateralization clause that provided the following:

> **CROSS COLLATERALIZATION**. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable or jointly with others, whether obliged as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations and whether the obligation to repay such amounts may be become otherwise unenforceable.

On May 1, 2007, debtors and Peoples signed a Change in Terms Agreement extending the maturity of Peoples' Loan 1 to May 27, 2007 and acknowledging that the balance then due was $214,044.26. On September 5, 2007, debtors and Peoples signed another Change In Terms Agreement reflecting that the balance due was $115,044.26.

On November 26, 2007, the debtors obtained a second loan from Peoples in the amount of $400,000.00, evidenced by Promissory Note #03553 ("Peoples' Loan 2"). This loan was secured by a real estate mortgage dated November 26, 2007, recorded December 14, 2007. This loan referenced eight (8) separate parcels of real estate that were subject to the mortgage. This mortgage did not list/reference any of the lots in Windsor Place. This loan was also secured by a Commercial Security

Agreement dated November 26, 2007 covering various mobile homes described as inventory. Also during this time, Peoples extended the due date on Peoples' Loan 1 until December 5, 2008.

Around August 20, 2008, the debtors solicited a loan from Banterra in order to build a speculation house on one of the Windsor Place lots. Along with this loan request, the debtors attested to Banterra that the information provided in the loan application was complete and accurate. The debtors provided Banterra with a financial statement dated March 5, 2008. However, the debtors' statement failed to disclose Peoples Loan 2 in the amount of $400,000.00. The debtors did list Peoples's Loan 1, which was secured by a first mortgage on the Windsor Place lots. The commitment for title insurance obtained by Banterra contained a special exemption: "[m]ortgage dated November 1, 2004... executed by Cort and Lisa Jones and given to Peoples National Bank to secure a note in the amount of $214,044.26 and such other sums as provided therein."

Thereafter, Banterra loaned the debtors $296,000.00. The Banterra Loan was secured by a construction mortgage dated August 26, 2008 and recorded September 3, 2008. On December 31, 2009, debtors refinanced the construction loan with Banterra by a new Banterra Note for $295,956.84 and secured by a mortgage that was recorded on January 5, 2010. The debtors used the proceeds of the Banterra Loan to construct a spec home at 10 Windsor Place (Windsor Place subdivision 5) and, after construction was completed, they lived in the house as their principal residence.

On December 21, 2010, the debtors filed a voluntary Chapter 11 petition. Peoples and Banterra filed wholly secured proofs of claim as to their respective obligations. The bankruptcy court allowed debtors to sell the 10 Windsor Place property. On May 31, 2011, the property was sold for $388,500.00. The parties do not dispute that Peoples, through the 2004 mortgage on the Windsor Place lots, is entitled to be paid the balance of Peoples Loan 1.

In the bankruptcy court, Peoples argued that pursuant to the cross-collateralization clause contained in the 2004 mortgage, it is also entitled to at least partial payment of Peoples' Loan 2. While Banterra argued that the cross-collateralization clause is not applicable to this case as it did not have actual knowledge of Peoples' Loan 2, as it is a subsequent purchaser without notice and therefore, it is entitled to the remaining proceeds after payment of Peoples' first mortgage. Peoples filed a complaint requesting that the bankruptcy court determine the priority fo the parties' liens. The parties filed cross motions and the bankruptcy court ruled in favor of Peoples. The Debtors took no position in this matter as to the validity of the cross collateralization clause between Peoples and Debtors.

## IV.  Analysis

Here, the parties agree that Illinois law applies as this action occurred in Illinois and pertains to Illinois property. *U.S. v. 19.86 Acres of Land in East St. Louis, St. Clair County, Ill.,* 141 F.2d 344, 346 (7th Cir. 1944). Under Illinois law, 765 ILCS 5/11 provides that a mortgage should "... recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by

note or otherwise…" In *Bullock v. Battenhousen*, 108 Ill. 28 (1883), the Illinois Supreme Court held that the policy, though not the letter, of Illinois statutes requires, in all cases, a statement upon the record of the amount secured and that under the registry laws the record of a trust deed does not charge *bona fide* purchasers without actual notice with knowledge of the indebtedness of the promissory note set out in the bill. That statute required the mortgage to recite the nature of the amount of the indebtedness and the present statute still requires that the mortgage recite the nature and amount of indebtedness.

Also, in *Bergman v. Bogda*, 46 Ill. App. 351 (Ill. App. 1892), the appellate court found that it was impossible to tell from a mortgage what sum was given to secure when the note in the mortgage described everything except the amount of the note. That appellate court held that the record of the mortgage was not notice to the creditors and the *bona fide* purchasers, of the amount of indebtedness for which the note was given. Further, in *Flexter v. Woomer*, 197 N.E.2d 161 (Ill. App. 1964), the appellate court, citing *Battenhousen*, held that a mortgage which failed to state either the amount of indebtedness or the maturity date was insufficient as constructive notice, and granted priority to a subsequently recorded mortgage.

Moreover under Illinois law, a cross-collateralization clause, also known as a "dragnet clause" "saves the parties the trouble of executing a new security agreement every time there is a further extension of credit. It also backstops the lender against the possibility of an inadvertent failure by the borrower to execute a new agreement." *Universal Guaranty Life Ins. Co. v. Coughlin*, 481 F.3d 458, 463 (7th Cir.

2007)(quoting *In re Kazmierczak*, 24 F.3d 1020, 1021 (7th Cir. 1994). These types of clauses are not favored in Illinois, but are enforceable **if they are clear and unambiguous**. *Id*. (omitting case citations)(emphasis supplied). "Contradictory language in a contract is classically ambiguous." *Universal Guaranty*, 481 F.3d at 464(citing *Yates v. Farmers Auto Ins. Ass'n*, 724 N.E.2d 1042, 1045 (Ill App. 2000); *Chastain v. Chastain*, 500 N.E.2d 998, 1000 (Ill. 1986)).

>Here, the bankruptcy court held:
>
>"Therefore, the Court concludes that upon being apprised that Peoples' mortgage on the Windsor Place lots contained a cross-collaterallization clause, it was incumbent upon Banterra to diligently investigate whether the debtors had other obligations that may be affected by the provision. To hold otherwise would render cross-collateralization clauses ineffective as to subsequent mortgages in virtually every circumstance, and would effectively, allow subsequent mortgagees to simply ignore cross-collateralization clauses without peril."

The Court respectfully disagrees with the bankruptcy court's decision. A mortgage together with a cross-collateralization clause that is unambiguous and gives appropriate notice, as required by law, will pass scrutiny. In this case, to the contrary, the Court finds that the bankruptcy court erred in failing to apply controlling Illinois law, which requires a mortgage to describe the nature of the debt secured, amount secured, due date and interest rate, to the Peoples' mortgage cross-collateralization clause. In this instance, the Peoples' mortgage contained a cross-collateralization clause that was inherently ambiguous and contrary to the law as it has contradictory language throughout the mortgage. The mortgage did not describe any other note by amount, date, interest rate or maturity, purportedly secured by the

mortgage. Peoples did not record any modification of the mortgage showing a lesser debt.

Further, the Mortgage contained a maximum indebtedness clause that stated the maximum debt secured was $214,044.26 and the "Indebtedness" clause defined the secured debt as the "Note" which was defined to mean "a note in the amount of $214,044.26 dated November 1, 2004, and all renewals, modifications and extensions thereof." By the very terms of the mortgage, which defined the debt, the only debt secured, or that could be secured by that mortgage was the Note for $214,044.26. This note and mortgage does not contain any language authorizing future advances or a revolving line of credit. Further, it did not mention the new mortgage. This mortgage is valid and effective as to the original $214,044.26 dispersed and is effective to bind the lots at the Windsor Place as collateral. However, the mortgage is defective to a bona fide subsequent purchaser without notice as the language of the cross-collateralization clause afforded no basis from which any person could ascertain from the public records the nature, extent, amount of debt or due date of any other debt purportedly secured by the mortgage. These specific provisions evidence an intent that the mortgage not secure any other debt, because at the time the mortgage was signed and the funds advanced on the note, no other debt could have been secured. The inconsistency between the clear definition of the debt secured by the mortgage of $216,044.26 and the Note in the amount of $214,044.26 and the cross-collateralization clause's language that the mortgage "secures all obligations, debts and liabilities, plus interest thereon, of Grantor to

Lender, or any one of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated" violates the rule that a mortgage must describe with particularity the debt secured.

Furthermore, Peoples did record a mortgage for $400,000.00 that did *not* list the Windsor Place real estate as collateral. Banterra was aware of the $214,044.26 mortgage but was not aware of the $400,000.00 loan. It is clear that the Peoples' $400,000 mortgage was not within the chain of title and did not put Banterra on notice. Again, the cross collateralization clause did not describe any note, debt amount, maturity date, or other information from which a person could reasonably identify a note purportedly secured. If the rule that a proper description of the debt secured is abrogated, then mortgages may be filed which simply state "all debt" with astronomical limits, rendering the records meaningless and would require lenders to look outside the chain of title for facts not of record to determine title. Thus, the Court finds that the cross-collateralization clause contains contradictory language, is ambiguous and did not put Banterra on notice.

Based upon the requirements of 765 ILCS 5/11 and Illinois case law, the failure to describe any other debts secured by the Peoples' Mortgage, with particularity, as to the amount and the property, is fatal to Peoples' Mortgage and prevents the mortgage from securing any debt other than the balance due on the

Note. Peoples' mortgage was not a sufficient mortgage as a matter of law to provide record notice, inquiry notice or chain of title notice that any debt than the Note for $214,044.26 was secured by the mortgage. Therefore, the Court reverses the bankruptcy court's decision and remands this case to the bankruptcy court to deny Peoples' motion for summary judgment and grant Banterra's motion for summary judgment.

### V. Conclusion

Thus, the Court **REVERSES** the decision of the bankruptcy court and **REMANDS** this case for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

Signed this 27th day of August, 2012.

Digitally signed by David R. Herndon
Date: 2012.08.27 15:35:06 -05'00'

**Chief Judge**
**United States District Court**